UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| NEUROMUSCULAR TECHNOLOGY, LLC, et al., | ) ) ) ) |  |
| Petitioners, | ) ) |  |
| v. | ) ) ) | Civil Action No. 1:18-cv-277 (LO/TCB) |
| OMNIVOX LLC, | ) ) |  |
| Respondent. | ) ) ) |  |

**REPORT AND RECOMMENDATION**

THIS MATTER comes before the Court on Petitioners' Motion for Default Judgment (Dkt. 13). After a representative for Respondent failed to respond to Petitioners' motion or to appear at the hearing on July 13, 2018, the matter was taken under advisement.[1] For the reasons stated below, the undersigned U.S. Magistrate Judge recommends that Petitioners' Motion for Default Judgment be GRANTED.

I. INTRODUCTION

A. Background

On March 13, 2018, Neuromuscular Technology, LLC ("NME") and Bodiflo LLC ("Bodiflo") (together "Petitioners") filed this lawsuit against Omnivox LLC ("Respondent"). On March 23, 2018, Petitioners amended their petition that initiated this lawsuit, alleging that

---

1. Relevant filings before the Court include the First Amended Petition to Confirm Arbitration Award (Dkt. 8) ("Am. Pet."), the Subcontract Agreement between NME and Omnivox (Dkt. 8-2) ("NME Subcontract"), the Subcontract Agreement between Bodiflo and Omnivox (Dkt. 8-3) ("Bodiflo Subcontract"), Petitioners' Motion for Default Judgment (Dkt. 9) ("Mot. Default J."), the Award of Arbitrator (Dkt. 13-1) ("Award"), the Notice Regarding Status of Omnivox LLC d/b/a True North Consulting (Dkt. 17) ("Notice"), and all attachments and exhibits submitted with those filings.

1

Respondent has failed to pay the amount granted to Petitioners pursuant to an arbitration award. Petitioners now seek an entry of default judgment against Respondent for the amount due, plus interest from and after judgment, and administrative fees and expenses, as awarded by the arbitration. (Mot. Default J. at 3.)

### B. Jurisdiction and Venue

Before the Court can render default judgment, it must have both subject-matter jurisdiction and personal jurisdiction over a defaulting party, and venue must be proper.

The Court has subject-matter jurisdiction over this action. A court shall have subject-matter jurisdiction when an action involves a dispute between citizens of different states and the amount in controversy exceeds the sum of $75,000. See 28 U.S.C. § 1332(a). In this case, Petitioners are Nevada limited liability corporations with their principal places of business in Nevada, and are therefore citizens of Nevada. (Am. Pet. ¶¶ 1-2.) Respondent is a Delaware limited liability corporation with its principal place of business in Illinois. (Id. ¶ 3; Notice at 1, Exs. A-B.)[2] With regards to the amount in controversy, the amount exceeds $75,000 because Petitioners seek payments of $418,212 to NME and $239,664 to Bodiflo, plus other payments, which well exceed $75,000. (Am. Pet. at 5.) Accordingly, the Court has subject-matter jurisdiction over this action.

The Court has personal jurisdiction over Respondent in this action. For personal jurisdiction in a lawsuit involving confirmation of an arbitration award, after any party to an arbitration has applied to a court for an order confirming the arbitration award, notice of the petition "shall be served upon the adverse party, and thereupon the court shall have jurisdiction

---

2. Petitioners initially alleged that Respondent was an Illinois limited liability corporation with its principal place of business in Illinois. (Am. Pet. ¶ 3.) However, Petitioners later submitted a notice to the Court, which included documents from the Office of the Illinois Secretary of State, showing that Respondent is a Delaware limited liability corporation. (Notice at 1, Exs. A-B.)

of such party as though he had appeared generally in the proceeding." 9 U.S.C. § 9. Petitioners were parties to the arbitration and have applied for a confirmation of the award in this Court. (Am. Pet. ¶¶ 13, 15, 17.) Further, as stated in more detail below, notice of this petition was served upon Respondent. Therefore, this Court has personal jurisdiction as if Respondent had appeared generally in the proceeding.

Venue in this action is proper in this Court. When parties that have entered into an arbitration agreement that states that a specific court shall enter judgment confirming an arbitration award, "then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award." 9 U.S.C. § 9. The subcontract agreements by Petitioners and Respondent specified that all arbitration proceedings shall be handled by courts of Arlington County, Virginia. (Am. Pet. ¶ 9; NME Subcontract § H-19; Bodiflo Subcontract § H-19.) As this Court is the federal court that contains Arlington County, Virginia, within its jurisdiction, venue is proper in this Court for this arbitration confirmation proceeding.

### C. Service of Process

Before the Court can render default judgment, it must be satisfied that a defaulting party has been properly served. When an adverse party in a proceeding to confirm an arbitration award is a nonresident of the district within which the award was made, "then notice of the application shall be served ... in like manner as other process of the court." 9 U.S.C. § 9.[3] As a general rule

---

3. Technically, for a nonresident adverse party in an arbitration, notice shall be served "by the marshal of any district within which the adverse party may be found in like manner as other process of the court." 9 U.S.C. § 9. While it appears that the language requiring notice "by the marshal" merely fails to account for the amendments to the Federal Rules reducing the role of the U.S. Marshals Service as process servers in civil cases, Petitioners' failure to have the U.S. Marshals Service provide service may nevertheless make service improper. However, in light of Respondent otherwise still being properly served in some manner and failing to challenge proper

3

of federal courts, a party must be served with the summons and complaint filed with a federal court. See FED. R. CIV. P. 4. However, various avenues exist to serve a party.

In serving process to a corporation, a party may follow state law for service in the state where service is made. See FED. R. CIV. P. 4(e)(1), (h)(1)(A). By completing service in Illinois, Petitioners therefore must follow service under Illinois law. Under Illinois law, a limited liability company may be served by completing service on the Illinois Secretary of State, should the Illinois Secretary of state be the company's agent. 805 ILL. COMP. STAT. 180/1-50(a). The Illinois Secretary of State is irrevocably appointed as agent of a limited liability company "[w]hen the admission of a foreign limited liability company to transact business in [Illinois] has been revoked or withdrawn." Id. 180/1-50(b)(5). To properly utilize the Illinois Secretary of State for service of a limited liability company, a party must (1) provide the Illinois Secretary of State a copy of the process, notice, or demand, and other papers required for service by law, (2) provide notice of service on the Illinois Secretary of State and a copy of process, notice, or demand, and other papers required for service by law, to the limited liability company by registered or certified mail to its last registered office, and (3) attach an affidavit of compliance as prescribed by the Illinois Secretary of State to the process, notice, or demand. Id. 180/1-50(c).

In this case, Respondent is considered by the Illinois Secretary of State to be a foreign limited liability company that has had its admission to transact business in Illinois revoked or withdrawn. (Notice Exs. A-B.) Accordingly, Respondent may be served by completing service on the Illinois Secretary of State, which Petitioners have done. Petitioners have provided the Illinois Secretary of State with a copy of process, provided notice of service on the Illinois

---

service, and in light of the notice requirement "by the marshal" being unclear within the Fourth Circuit, it is appropriate to deem service proper for the purposes of default judgment. See Elevation Franchise Ventures, LLC v. Rosario, No. 1:13-cv-719 (AJT/JFA), 2013 WL 5962984, at *3 n.1 (E.D. Va. Nov. 6, 2013).

Secretary of State and a copy of process to Respondent by certified mail to its last known registered address, and attached affidavits of compliance as prescribed by the Illinois Secretary of State. (Dkt. 10.) Therefore, service of process on Respondent was proper as Petitioners served the Illinois Secretary of State as an agent authorized to accept service by law for Respondent in accordance with Illinois law.

### D. Grounds for Default Judgment

The entry of default judgment may be appropriate when a party has failed to appear in a case. See FED. R. CIV. P. 55. To date, Respondent has not appeared or otherwise participated in these proceedings. On May 14, 2018, Petitioners filed their Request for Entry of Default (Dkt. 11), seeking an entry of default for Respondent. On May 16, 2018, the Clerk of the Court issued the Entry of Default (Dkt. 12) for Respondent. On June 6, 2018, Petitioners filed their Motion for Default Judgment. The undersigned U.S. Magistrate Judge then held a hearing on Petitioners' Motion for Default Judgment on July 13, 2018, at which no representative for Respondent appeared. Finding the matter uncontested, the undersigned took the matter under advisement to issue this Report and Recommendation.

## II. FINDINGS OF FACT

Upon a full review of the pleadings and the record in this case, the undersigned finds that Petitioners have established the following facts.

Petitioner NME is a Nevada limited liability corporation with its principal place of business in Reno, Nevada. (Am. Pet. ¶ 1.) NME's sole member is a citizen of Australia who is domiciled in Australia. (Id.) NME goes by various names, including "Neuromuscular Technology, LLC," "Neuromuscular Engineering and Technology," and "Neuromuscular Engineering Technology." (Id.) Petitioner Bodiflo is a Nevada limited liability corporation with

5

its principal place of business in Reno, Nevada. (Id. ¶ 2.) Bodiflo's sole member is a citizen of Australia who is domiciled in Australia. (Id.) Respondent Omnivox is a Delaware limited liability corporation with its principal place of business in Illinois. (Id. ¶ 3; Notice at 1, Exs. A-B.) All members of Respondent are citizens of the United States and are domiciled in South Carolina, Illinois, and Minnesota. (Am. Pet. ¶ 3.) Respondent also goes by the name "Truth North Consulting." (Id.)

Respondent entered into a prime contract with the United States government, and then entered into subcontracts with each of the Petitioners. (Id. ¶ 8.) NME signed its subcontract with Respondent under the name "Neuromuscular Engineering and Technology." (Id. ¶ 1.) The subcontract with NME contains the following arbitration agreement:

> **H-19 ARBITRATION OF DISPUTES**
>
> (a) Neuromuscular Engineering agrees that, in the event of any dispute arising out of or relating to this Agreement, such disputes shall be resolved by submission to binding arbitration administered by the American Arbitration Association (AAA) in accordance with its rules and procedures. Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. All arbitration proceedings will be brought in Arlington County, Virginia.
>
> (b) A single qualified arbitrator will be chosen to serve under the rules of the AAA, unless the parties mutually agree in writing to a panel of three arbitrators. The decision of the arbitrator(s) will be final, binding, and not subject to judicial review. Neuromuscular Engineering agrees that arbitration can be compelled by the courts of Arlington County, Virginia, and that Neuromuscular Engineering cannot avoided [sic] it by the filing of another lawsuit or proceeding. Provisional or ancillary remedies can be sought by Omnivox, without a waiver of arbitration rights. Neuromuscular Engineering agrees that the Agreement to arbitrate is valid, enforceable, and irrevocable.

(Id. ¶ 9; NME Subcontract § H-19.) The subcontract with Bodiflo contains the same arbitration agreement, except with Bodiflo listed instead of NME:

> **H-19 ARBITRATION OF DISPUTES**
>
> (a) BODIFLO agrees that, in the event of any dispute arising out of or relating to

6

> this Agreement, such disputes shall be resolved by submission to binding arbitration administered by the American Arbitration Association (AAA) in accordance with its rules and procedures. Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. All arbitration proceedings will be brought in Arlington County, Virginia.
>
> (b) A single qualified arbitrator will be chosen to serve under the rules of the AAA, unless the parties mutually agree in writing to a panel of three arbitrators. The decision of the arbitrator(s) will be final, binding, and not subject to judicial review. BODIFLO agrees that arbitration can be compelled by the courts of Arlington County, Virginia, and that BODIFLO cannot avoided [sic] it by the filing of another lawsuit or proceeding. Provisional or ancillary remedies can be sought by Omnivox, without a waiver of arbitration rights. BODIFLO agrees that the Agreement to arbitrate is valid, enforceable, and irrevocable.

(Am. Pet. ¶ 9; Bodiflo Subcontract § H-19.)

In 2016, despite a lack of notice from Respondent, Petitioners learned that the United States government had made certain payments to Respondent for Petitioners' work under their respective subcontracts totaling $647,876.76. (Am. Pet. ¶ 10.) The $647,876.76 was comprised of $418,212.40 under NME's subcontract with Respondent and $239,664.36 under Bodiflo's subcontracts with Respondent. (Id.) Respondent did not pay any of the amounts to Petitioners, even after Petitioners demanded such payment from Respondent. (Id. ¶¶ 10-11.) At no time did Respondent dispute that it owed $657,876.76 to Petitioners. (Id. ¶ 12.)

On November 1, 2016, Petitioners filed an arbitration demand with the American Arbitration Association ("AAA") seeking a total of $647,876.76, which represented $418,212.40 for NME and $239,664.36 for Bodiflo, plus interest, from Respondent. (Id. ¶ 13.) Respondent's counsel was present for, but did not participate in, the administrative scheduling call with the arbitrator. (Id. ¶ 14.) Respondent's counsel did not otherwise participate in the arbitration in a representative capacity, as Respondent did not file an answer, submit a pre-hearing brief, or attend the arbitration hearing. (Id.) On October 10,

2017, Petitioners participated in a half-day hearing before the arbitrator in Washington, D.C. (Id. ¶ 15.) On November 9, 2017, the arbitrator issued the award, directing Respondent to pay Petitioners $647,876, representing $418,212 for NME and $239,664 for Bodiflo, plus interest. (Id. ¶ 16; Award at 2.) The award also directed Respondent to pay its share of the AAA administrative fees and expenses, which amounted to $7,700. (Am. Pet. ¶ 16; Award at 2.) Since the arbitrator issued the award, Respondent has not filed an application to vacate, modify, or correct the award. (Am. Pet. ¶ 19.)

### III. EVALUATION OF PETITIONERS' PETITION

When a party has defaulted, the well-pleaded allegations of facts set forth in the complaint against it are deemed admitted. JTH Tax, Inc. v. Grabert, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001)). Before entering default judgment, however, the Court must evaluate the complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim. GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate Petitioners' petition, which functions as a complaint in this case, as to whether it has established the appropriate facts that would entitle them to confirmation of the arbitration award.

Petitioners assert that they are entitled to confirmation of the arbitration award. (Am. Pet. ¶ 20; Mot. Default J. ¶ 2.) A court "must" grant an application to confirm an arbitration award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. A court's role in doing much more than confirming the arbitration award is decisively limited. See Remmey v. PaineWebber, Inc., 32 F.3d 143, 146 (4th Cir. 1994) ("[I]n reviewing arbitral awards, a district or appellate court is limited to determining whether the arbitrators did the job they were told to do—not

whether they did it well, or correctly, or reasonably, but simply whether they did it ." (internal citations omitted)); Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir. 1986) ("A confirmation proceeding under 9 U.S.C. § 9 is intended to be summary: confirmation can only be denied if an award has been corrected, vacated, or modified.").

Here, Petitioners and Respondent contracted to submit to arbitration proceedings pursuant to their subcontract agreements. (Am. Pet. ¶ 9.) Petitioners and Respondent had opportunities to participate in both a pre-arbitration administrative phone call and the substantive arbitration proceedings. (Id. ¶¶ 14-15.) Despite such opportunity, Respondent did nothing more than have its counsel be present for, but not participate in, the pre-arbitration administrative phone call, and Respondent did not have its counsel participate at all in the arbitration proceedings. (Id.) The arbitrator then awarded Petitioners $647,876 representing $418,212 for NME and $239,664 for Bodiflo, plus interest, and the arbitrator also directed Respondent to pay its share of the AAA administrative fees and expenses, which amounted to $7,700. (Id. ¶ 16; Award at 2.) The arbitration award has since not been vacated, modified, or corrected. (Am. Pet. ¶ 19.)

As such, it is clear that Petitioners have presented the appropriate information to this Court for their arbitration award to be confirmed, in accordance with 9 U.S.C. § 9.

## IV. REQUESTED RELIEF

Petitioners seek payment by Respondent of the arbitration award, which consists of $647,876, representing $418,212 for NME and $239,664 for Bodiflo, pre-judgment interest from January 2, 2012, to November 7, 2017, at the rate of 6% per annum, post-judgment interest running from December 7, 2017, at the rate of 6% per annum, and $7,700 worth of the AAA administrative fees and expenses. (Id. at 5; Mot. Default J. at 3.) As Petitioners only seek as

relief the award they received from the arbitration, and in light of the fact that the Court's limited discretion in confirming such relief, it is appropriate for the Court to confirm the arbitration award and grant such relief to Petitioners.

## V. RECOMMENDATION

For the aforementioned reasons, the undersigned U.S. Magistrate Judge recommends that the Court confirm the arbitration award in favor of Petitioners and that Petitioners receive:

a. Judgment in favor of Neuromuscular Technology, LLC, and against Omnivox LLC in the amounts of $418,212; plus pre-judgment interest running from January 2, 2012, through November 7, 2017, at the rate of 6% per annum; and post-judgment interest running from December 7, 2017, through the date that Omnivox LLC satisfies the judgment, at the rate of 6% per annum; plus $7,700 representing Omnivox LLC's portion of the AAA administrative fees and expenses; and

b. Judgment in favor of Bodiflo LLC, and against Omnivox LLC in the amounts of $239,664; plus pre-judgment interest running from January 2, 2012 through November 7, 2017, at the rate of 6% per annum; and post-judgment interest running from December 7, 2017 through the date that Omnivox LLC satisfies the judgment, at the rate of 6% per annum.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send copies of this Report and Recommendation to Respondent at the following address of record:

Omnivox LLC d/b/a True North Consulting
3000 Woodcreek Drive Suite 300
Downers Grove, Illinois 60515

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

July 23rd, 2018
Alexandria, Virginia